1

2

3

4                   UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   JENNIFER ARNOLD,                          Case No.  15-cv-04083-HSG
                    Plaintiff,
8                                             **ORDER GRANTING DEFENDANTS'**
        v.                                    **MOTION FOR JUDGMENT ON THE**
9                                             **PLEADINGS**
    COUNTY OF ALAMEDA, et al.,
10                                            Re: Dkt. No. 15
                    Defendants.
11

12

13      Pending before the Court is a motion for judgment on the pleadings brought by Defendants

14   County of Alameda and Sheriff Gregory J. Ahern, individually and in his official capacity as

15   Sheriff of the County of Alameda[1] ("Defendants").  Dkt. No. 15 ("Mot.").  For the reasons

16   articulated below, the Motion is GRANTED WITH LEAVE TO AMEND.

17   **I.    BACKGROUND**

18      On July 24, 2015, Plaintiff Jennifer Arnold filed this action in Alameda County Superior

19   Court against Defendants and Does 1-25.  Dkt. No. 1, Ex. A ("Compl.").  On September 8, 2015,

20   Defendants removed the action to this Court.  Dkt. No. 1.  Plaintiff asserts California negligence

21   and 42 U.S.C. § 1983 claims against Defendants for injuries that Plaintiff sustained at the hands of

22   Elias Michael Diamond, a criminal defendant who Defendants left unguarded after transferring

23   him to Valley Care Medical Center ("VCMC") where Plaintiff was working as a nurse.  Compl.

24   ¶ 1.  Plaintiff seeks compensatory damages, attorney's fees, and costs.  *Id.*

25      For purposes of this motion, the Court accepts the following as true:  In November 2004,

26

27   ───────────────────────

28   [1] An action against Defendant Ahern in his official capacity is equivalent to suing the County
    itself.  *See Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  Thus, any references to
    Defendant Ahern in this motion will refer to his liability in his individual capacity.

United States District Court
Northern District of California

1    Diamond was arrested on suspicion of strangling and killing his roommate in the psychiatric home

2    where they both resided.  *Id.* ¶ 16.  On August 29, 2014, Diamond was again arrested and taken

3    into custody in San Leandro, California for indecent exposure.  *Id.* ¶ 17.  Diamond was charged

4    with indecent exposure and remanded to the Santa Rita Jail, which Defendant Alameda County

5    owns and the Defendants operate.  *Id* ¶ 18.  Sometime between September 2, 2014, and September

6    7, 2014, Defendants transported Diamond from Santa Rita Jail to VCMC for medical treatment.

7    *Id.* ¶ 19.  Subsequently, when Diamond was transferred to Plaintiff's floor during the evening of

8    September 7th or the morning of September 8th, Defendants did not warn the VCMC staff that

9    Diamond was in custody or mentally unstable.  *Id.* ¶ 22.  Further, Defendants did not guard

10   Diamond.  *Id.* ¶ 26.  After Diamond was transferred to Plaintiff's floor, he wandered out of his

11   room only partially clothed.  *Id.* ¶ 23.  Plaintiff discovered Diamond, who appeared disoriented,

12   and escorted him back to his room according to VCMC custom and practice.  *Id.*  When Plaintiff

13   and Diamond entered his room, Diamond attacked Plaintiff, began to strangle her, and attempted

14   to force oral copulation.  *Id.* ¶ 24.  As a result of the struggle, Plaintiff suffered physical injuries

15   and emotional distress.  *Id.* ¶ 25.

16            Plaintiff articulates four claims for relief:  (1) violation of her Fourteenth Amendment

17   rights under 42 U.S.C. § 1983 against Defendants and Does 1-25; (2) supervisory liability under

18   42 U.S.C. § 1983 against Defendant Ahern and Does 1-25; (3) municipal liability under 42 U.S.C.

19   § 1983 against Defendant Alameda County; and (4) negligence against Defendants and Does 1-25.

20            On December 15, 2015, Defendants filed the pending motion for judgment on the

21   pleadings as to all claims for relief.

22   **II.    DISCUSSION**

23            Defendants articulate six main reasons that their motion should be granted:  (1) the Court

24   can take judicial notice of Diamond's Promise to Appear, which establishes that he was not in

25   custody at the time of Plaintiff's attack; (2) Plaintiff fails to plead an affirmative duty that

26   Defendants breached in support of her negligence claim; (3) Defendant Ahern has statutory

27   immunity to Plaintiff's negligence claim; (4) Defidant Alameda County cannot be held liable for

28   negligence except as provided by statute; (5) Plaintiff fails to sufficiently plead a special

United States District Court
Northern District of California

2

1    relationship that would permit Plaintiff's § 1983 claims; and (6) Plaintiff fails to allege a state-

2    created danger to permit Plaintiff's § 1983 claims.

3        **A.      Request for Judicial Notice**

4        Before turning to the substance of the motion, the Court considers Defendants' request that

5    the Court take judicial notice of Diamond's Promise to Appear filed in his underlying criminal

6    case in Alameda Superior Court.  Dkt. No. 16, Ex. A.  Defendants argue that a Promise to Appear,

7    which California law provides "may be signed by a misdemeanor arrestee/detainee in order to

8    secure his or her release, per California Penal Code section 853.6, subdivision (a)(1)," reflects that

9    Diamond signed his name on September 5, 2014, at 4:32 p.m.  Mot. at 3.  Accordingly,

10   Defendants contend that the signed Promise to Appear establishes as a matter of law that Diamond

11   was released on September 5, 2014, at 4:32 p.m., and was not in custody when Diamond attacked

12   Plaintiff several days later.  *Id.*

13       The doctrine of judicial notice permits a court to take as true "a fact that is not subject to

14   reasonable dispute because it:  (1) is generally known within the trial court's territorial

15   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

16   reasonably be questioned."  Fed. R. Evid. 201(b).  "In particular, a court may take judicial notice

17   of its own records in other cases, as well as the records of an inferior court in other cases."  *United

18   States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (internal citations omitted).  However, "a high

19   degree of indisputability is the essential prerequisite to taking judicial notice of adjudicative facts

20   and [] the tradition of taking judicial notice has been one of caution in requiring that the matter be

21   beyond reasonable controversy."  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir.

22   2005) (internal quotations and citations omitted).  Thus, while a court may take notice of the

23   existence of public court documents, it may not "draw inferences or take notice of facts that might

24   reasonably be disputed."  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011);

25   *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (district court properly took

26   judicial notice of existence of publicly-recorded, signed extradition waiver form, but "erred by taking

27   judicial notice of disputed matters" in concluding that signer of form in fact validly waived his rights).

28       The Court GRANTS IN PART AND DENIES IN PART Defendants' request to take

United States District Court
Northern District of California

3

1    judicial notice of Diamond's Promise to Appear.  While the Court may properly notice that the

2    signed Promise to Appear exists, the Court cannot "beyond reasonable controversy" infer from the

3    document's existence when, or even if, Diamond was released.  *See Rivera*, 395 F.3d at 1151.

4    Indeed, as Plaintiff asserts, Diamond's Promise to Appear reveals nothing about Defendants'

5    general practice following an individual's completion of a Promise to Appear or whether such

6    practice was followed with Diamond.  *See* Dkt. No. 23 ("Opp'n") at 10.  At the pleading stage, the

7    Court cannot resolve such a disputed issue based on the existence of a document that is both

8    "subject to varying interpretations" and "reasonably [] disputed."  *See Corinthian Colleges*, 655

9    F.3d at 999; *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011); *Lee,* 250 F.3d

10   at 689-690.

11          Accordingly, the Court will take judicial notice of the existence and facial content of

12   Diamond's Promise to Appear, but the Court will not infer Diamond's custodial status during the

13   relevant time period from the Promise to Appear.  Rather, as required at the pleading stage, the

14   Court will accept as true Plaintiff's allegation that Diamond was in custody at the time of

15   Plaintiff's attack.  *See* Compl. ¶ 22.

16          **B.     Legal Standard**

17          Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

18   early enough not to delay trial—a party may move for judgment on the pleadings."  The legal

19   standard that governs a Rule 12(c) motion is the same as that which governs a Rule 12(b)(6)

20   motion.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

21          "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

22   legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela*

23   *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a

24   plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

25   *Corp. v. Twombly*, 550 U.S. 540, 570 (2007).  A claim is facially plausible when a plaintiff pleads

26   "factual content that allows the court to draw the reasonable inference that the defendant is liable

27   for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

28          In reviewing the plausibility of a complaint, courts "accept factual allegations in the

United States District Court
Northern District of California

4

1   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

2   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

3   Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

4   fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

5   2008).

6          "Rule 12(c) of the Federal Rules of Civil Procedure neither expressly provides for, nor

7   bars, partial judgment on the pleadings."  *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014

8   WL 695024, at *4 (N.D. Cal. Feb. 21, 2014).  However, courts commonly apply Rule 12(c) to

9   individual causes of action.  *Id.*  A court has discretion to permit leave to amend in conjunction

10  with a Rule 12(c) motion and may dismiss causes of action rather than grant judgment.  *Id.*  If a

11  court grants a motion for judgment on the pleadings, leave to amend should be granted unless such

12  amendment would be futile.  *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569

13  (9th Cir. 2008).

14       **C.     Section 1983 Claims**

15         Plaintiff asserts three claims under 42 U.S.C. § 1983:  (1) violation of Plaintiff's

16  Fourteenth Amendment rights against Defendants and Does 1-25; (2) supervisory liability for

17  violation of Plaintiff's Fourteenth Amendment rights against Defendant Ahern and Does 1-25; and

18  (3) a *Monell* violation against Defendant County of Alameda.  *See* Compl. ¶¶ 28-50; Opp'n at 3-5.

19  Because Plaintiff's claims for supervisory liability and a *Monell* violation are predicated on an

20  underlying constitutional violation, resolution of Plaintiff's claim that Defendants violated her

21  Fourteenth Amendment rights is determinative of Plaintiff's remaining § 1983 claims.  *See Van*

22  *Ort v. Estate of Stanewich*, 92 F.3d 831, 834 (9th Cir. 1996)); *see also R.H. v. Los Gatos Union*

23  *Sch. Dist.*, 33 F. Supp. 3d 1138, 1154 (N.D. Cal. 2014), *dismissed* (9th Cir. Oct. 29, 2014).

24         In support of her allegations of a § 1983 constitutional violation, Plaintiff asserts that

25  Defendants' failure to guard Diamond or to warn VCMC that Diamond was in custody and/or

26  dangerous constituted deliberate indifference or callous disregard for Plaintiff's safety.  *Id.* ¶¶ 33-

27  36.  Defendants move for a judgment that they cannot be held liable because neither the special

28  relationship exception nor the state-created danger exception imposes liability on them as a result

United States District Court
Northern District of California

5

1  of Diamond's attack against Plaintiff.  Mot. at 6-9.  The Court agrees with Defendants.

2       "To state a section 1983 claim, the plaintiff must allege that (1) the conduct complained of

3  was committed by a person acting under color of state law; and (2) the conduct deprived the

4  plaintiff of a constitutional right."  *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992).  Thus, as a

5  general rule, "a State's failure to protect an individual against private violence simply does not

6  constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago Cty. Dep't of Soc.*

7  *Servs.*, 489 U.S. 189, 197 (1989).  The Ninth Circuit recognizes two exceptions to this general

8  rule:  (1) the "special relationship" exception; and (2) the "danger creation" exception.  *Grubbs*,

9  974 F.2d at 121.

10      **i.    Special Relationship Exception**

11      As an initial matter, it is unclear whether Plaintiff asserts a § 1983 claim based on the

12 special relationship exception.  *See generally* Compl; Opp'n at 3-5 (addressing only the state-

13 created danger exception).  However, the Court will address this exception briefly.

14      Once the state creates a special relationship with an individual, "as in the case of custody

15 or involuntary hospitalization," the state can be liable for due process violations "premised on an

16 abuse of that special relationship."  *Grubbs*, 974 F.2d at 121.  However, the Ninth Circuit has

17 made clear that "[t]he special-relationship exception does not apply when a state fails to protect a

18 person who is not in custody."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011).  This is

19 because "when the State by the affirmative exercise of its power so restrains an individual's liberty

20 that it renders him unable to care for himself, and at the same time fails to provide for his basic

21 human needs . . . it transgresses the substantive limits on state action set by the Eighth

22 Amendment and the Due Process Clause."  *DeShaney*, 489 U.S. at 200.  "The affirmative duty to

23 protect arises not from the State's knowledge of the individual's predicament or from its

24 expressions of intent to help him, but from the limitation which it has imposed on his freedom to

25 act on his own behalf."  *Id.*  In other words, "it is the State's affirmative act of restraining the

26 individual's freedom to act on his own behalf—through incarceration, institutionalization, or other

27 similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections

28 of the Due Process Clause, not its failure to act to protect his liberty interests against harms

United States District Court
Northern District of California

1   inflicted by other means." *Id.*

2   Plaintiff does not contend that Defendants restrained her in any manner. *See generally*

3   Compl. Rather, Plaintiff alleges that Defendants transferred Diamond to VCMC and failed to

4   guard Diamond or to warn the hospital staff of his dangerous nature, which resulted in Plaintiff's

5   attack. *Id.* ¶¶ 2, 19-26. The complaint includes no allegation that Defendants restrained Plaintiff's

6   "freedom to act on [her] own behalf," and thus there was no special relationship between Plaintiff

7   and Defendants. *See generally id.*; *DeShaney*, 489 U.S. at 200.

8   Accordingly, the Court finds that Plaintiff cannot allege a § 1983 claim based on the

9   special relationship exception.

10   **ii.     State-Created Danger Exception**

11   However, Plaintiff does clearly allege that the state-created danger exception applies. *See*

12   *e.g.*, Compl. ¶¶ 19, 26, 32; Opp'n at 3-5. Plaintiff asserts that "Defendants affirmatively placed

13   Diamond, or through their deliberate indifference allowed others to affirmatively place Diamond,

14   in Plaintiff's place of employment," which resulted in Plaintiff's attack. Compl. ¶¶ 32-36.

15   A finding of state-created danger requires two elements: (1) "affirmative conduct on the

16   part of the state in placing the plaintiff in danger" and (2) the state must have acted with

17   "deliberate indifference" to a "known or obvious danger." *Patel*, 648 F.3d at 974. "Deliberate

18   indifference is a stringent standard of fault." *Id.* (internal quotations and citations omitted). In the

19   Ninth Circuit, deliberate indifference is "a higher standard than gross negligence because it

20   requires a culpable mental state, meaning that the state actor must recognize an unreasonable risk

21   and actually intend to expose the plaintiff to such risks without regard to the consequences to the

22   plaintiff." *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 846 (9th

23   Cir. 2011) (quoting *Patel*, 648 F.3d at 974).

24   Although Plaintiff contends that Defendants acted affirmatively by transporting Diamond

25   to VCMC, *see* Compl. ¶ 32, Plaintiff fails to articulate non-conclusory facts to plausibly support a

26   finding that Defendants acted with deliberate indifference. Plaintiff asserts that "Defendants

27   affirmatively placed Diamond, or through their deliberate indifference allowed others to

28   affirmatively place Diamond, in Plaintiff's place of employment." Compl. ¶ 32. Plaintiff further

United States District Court
Northern District of California

7

1   alleges that Defendants deprived her of her rights "knowingly, maliciously, and with conscious

2   and reckless disregard," and "[a]s a result of Defendants' deliberate indifference and/or callous

3   disregard," Plaintiff was injured. *Id.* ¶¶ 34, 36. These allegations are conclusory and are not

4   supported by the facts as pled. According to Plaintiff, Diamond was arrested on suspicion of

5   strangling and killing his roommate over ten years ago. Compl. ¶ 16. Plaintiff does not allege that

6   Diamond was ever charged or that the officers who transported Diamond to VCMC were aware of

7   his prior arrest. *See generally id.* Similarly, Plaintiff asserts that immediately prior to her attack,

8   Diamond was arrested on charges of indecent exposure because he was found dressed in a bikini.

9   *Id.* ¶ 17. Yet Plaintiff does not allege facts supporting an inference that wearing a bikini correlates

10  with violent tendencies. In sum, nothing about an indecent exposure arrest or a more than ten-

11  year-old suspicion of violent behavior plausibly suggests that Defendants recognized that

12  Diamond posed a "known or obvious danger" to Plaintiff. Moreover, even assuming *arguendo*

13  that Defendants knew that Diamond posed a risk, the facts as pled do not plausibly indicate that

14  Defendants acted with the intent to expose Plaintiff to such a risk. Accordingly, the Court finds

15  that Plaintiff does not adequately allege non-conclusory facts to plausibly support a finding of

16  deliberate indifference.

17       Plaintiff maintains that the facts of this case are "strikingly similar" to those in *Grubbs*, in

18  which the Ninth Circuit reversed the district court's dismissal of plaintiff's § 1983 claim, finding

19  that the state-created danger exception applied. Opp'n at 3-5. The Court disagrees.

20       In *Grubbs*, plaintiff L.W. was a registered nurse employed by the State of Oregon at a

21  medium security custodial institution for young male offenders. *Grubbs*, 974 F.2d at 120. The

22  defendants were L.W.'s employers at the custodial institution, who had hired L.W. and led her to

23  believe that she would not be required to work alone with male sex offenders. *Id.* Despite these

24  representations, defendants selected Blehm, a known sex offender who had failed all treatment

25  programs at the institution, to work alone with L.W. at her clinic. *Id.* Once L.W. and Blehm were

26  alone, Blehm raped and terrorized L.W. *Id.* L.W. brought a § 1983 action, and the defendants

27  moved to dismiss, arguing that L.W.'s § 1983 claim failed because (1) she was never in

28  defendants' custody, (2) L.W.'s status as a state employee barred her claim, and (3) L.W. alleged

United States District Court
Northern District of California

8

1    "mere negligence," which is insufficient to support a § 1983 claim. *Id.* at 121-24. The district

2    court granted defendants' motion to dismiss on the basis that victim custody is a prerequisite to a

3    § 1983 claim. *Id.* at 121.

4         The Ninth Circuit reversed on appeal, emphasizing that although some courts had

5    intermingled the special relationship and danger creation exceptions, "the distinction is

6    important." *Id.* As such, while custody is a prerequisite to the special relationship exception,

7    "custody is not a prerequisite to the 'danger creation' basis for a section 1983 third party harm

8    claim." *Id.* at 122. With respect to the defendants' state of mind, the Ninth Circuit declined to

9    define the mental state required under § 1983 because L.W. had "alleged facts demonstrating

10   official deliberate indifference in creating the danger." *Id.* at 122-23. In finding a sufficient

11   allegation of deliberate indifference, the Court noted that defendants allegedly assigned Blehm to

12   work with L.W. despite knowing that: (1) Blehm was not qualified to work with her; (2) "Blehm

13   had an extraordinary history of unrepentant violence against women and girls; (3) Blehm was

14   likely to assault a female if left alone with her; (4) L.W. would be alone with Blehm . . .; and (5)

15   [L.W.] would not be prepared to defend against or take steps to avert an attack because she had not

16   been informed at hiring that she would be left alone with violent offenders." *Id.* at 121.

17        The Court finds that the underlying facts pled in *Grubbs* are fundamentally different from,

18   and substantially more specific than, those alleged here. While the facts pled in *Grubbs* permitted

19   the Ninth Circuit to reasonably infer that the defendants had knowledge of Blehm's dangerous

20   nature and acted with intent to expose L.W. to the risk, Plaintiff's conclusory allegations here fail

21   to plausibly establish either prong of deliberate indifference. As such, the Court holds that *Grubbs*

22   does not support a finding that Plaintiff has adequately pled that the state-created danger exception

23   applies.

24        Because Plaintiff has failed to plead either the special relationship exception or the state-

25   created danger exception to establish § 1983 liability for private violence, her claims for

26   supervisory liability and a *Monell* violation must also fail. *See Van Ort v. Estate of Stanewich*, 92

27   F.3d 831, 835-36 (9th Cir. 1996); *see also R.H.*, 33 F.Supp.3d at 1154. The Court must thus

28   dismiss Plaintiff's three § 1983 claims.

United States District Court
Northern District of California

9

1    Without dispute, Plaintiff's allegations describe a traumatic and terrifying attack by

2    Diamond.  But the complaint as now pled does not contain facts sufficient to meet the "stringent"

3    deliberate indifference standard as to the County and the Sheriff's department.

4    **D.    California Negligence Claim**

5    Plaintiff also asserts a California negligence claim against Defendants and Does 1-25 for

6    "failing to guard Diamond while he was at [VCMC], prior to and leading up to the time when he

7    attacked Plaintiff."  Compl. ¶¶ 51-54.  Defendants move for judgment on Plaintiff's negligence

8    claim because (1) Plaintiff has failed to articulate the existence of a duty that Defendants owed

9    her; (2) a public entity such as Alameda County may not be held liable for injuries except as

10   provided by statute; and (3) Defendant Ahern and Defendant Alameda County are immune under a

11   variety of state law immunities.  Mot. at 3-6.

12   Prior to addressing any applicable statutory immunities, the Court must first determine

13   whether Defendants owed a duty of care to Plaintiff.  *See Williams v. State of California*, 34 Cal.

14   3d 18, 22 (1983) ("Conceptually, the question of the applicability of a statutory immunity does not

15   even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and

16   thus would be liable in the absence of such immunity.").  Although Plaintiff's complaint largely

17   alleges a duty to guard Diamond, *see generally* Compl., Plaintiff also references a duty to warn,

18   *see id.* ¶¶ 22, 33.  *See also* Opp'n at 5-8.  Because California recognizes both a duty to guard and a

19   duty to warn, the Court will address both theories of negligence.

20   **iii.    Duty to Guard**

21   Plaintiff contends that California Penal Code §§ 4011 *et. seq.* imposed a duty on

22   Defendants to guard Diamond during his hospital stay.  *See* Compl. ¶ 20.  Thus, Plaintiff argues,

23   Defendants were negligent in leaving Diamond unattended prior to Plaintiff's attack.  *Id.* ¶¶ 20-22,

24   26; Opp'n at 7-8.  Defendants counter that California Penal Code § 4011.7 establishes that

25   Defendants had no duty to guard Diamond.  Mot. at 6.  The Court agrees with Defendants.

26   California Penal Code § 4011(a) states:

27   When it is made to appear to any judge by affidavit of the sheriff or
     other official in charge of county correctional facilities or district
28   attorney and oral testimony that a prisoner confined in any city or

10

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

> county jail within the jurisdiction of the court requires medical or surgical treatment necessitating hospitalization, which treatment cannot be furnished or supplied at such city or county jail, the court in its discretion may order the removal of such person or persons from such city or county jail to the county hospital in such county; provided, if there is no county hospital in such county, then to any hospital designated by such court; *and it shall be the duty of the sheriff or other official in charge of county correctional facilities to maintain the necessary guards, who may be private security guards, for the safekeeping of such prisoner, the expense of which shall be a charge against the county.*

7    Cal. Pen. Code § 4011(a) (emphasis added).  However, California Penal Code § 4011.7 declares:

8

9

10

11

12

> *Notwithstanding the provisions of Sections 4011* and 4011.5, when it appears that the prisoner in need of medical or surgical treatment necessitating hospitalization or in need of medical or hospital care was arrested for, charged with, or convicted of an offense constituting *a misdemeanor, the court in proceedings under Section 4011 or the sheriff or jailer in action taken under Section 4011.5 may direct that the guard be removed from the prisoner while he or she is in the hospital*.

13   Cal. Penal Code § 4011.7.

14         Plaintiff acknowledges that Diamond was arrested and charged on September 29, 2014,

15   with violation of California Penal Code § 314.1, a misdemeanor.  *See* Compl. ¶ 18; Opp'n at 7-8.

16   Thus, under the unambiguous language of California Penal Code § 4011.7, Defendants had no

17   duty to guard Diamond during his hospital stay.

18         Plaintiff maintains that such an interpretation of § 4011.7 is illogical when viewed in the

19   context of California Penal Code § 4011.5.  Opp'n at 7-8.  According to Plaintiff, because

20   § 4011.5 requires law enforcement to apply to a superior court judge if a prisoner's medical

21   condition prevents him from being returned to jail within 48 hours, the Court's interpretation of

22   § 4011.7 would permit law enforcement to avoid their statutory duties by simply releasing

23   misdemeanants during a hospital stay.  *Id.*  However, even assuming *arguendo* that Plaintiff is

24   correct, that argument is for the California legislature, not this Court.  The Court is bound by the

25   clear language of California Penal Code § 4011.7, which establishes that Defendants had no duty

26   to guard Diamond, a misdemeanant, during his hospital stay.

27         Accordingly, the Court finds that Defendants did not have a duty to guard Diamond.

28

United States District Court
Northern District of California

1          **iv.   Duty to Warn**

2          In much less detail, Plaintiff also alleges that Defendants were negligent for failing to warn

3    anyone at VCMC about Diamond. *See* Compl. ¶¶ 22, 33. Specifically, Plaintiff asserts that

4    "Defendants failed to warn medical staff that Diamond was under their custody, and mentally

5    unstable [or dangerous], thereby depriving medical staff of the ability to take necessary

6    precautions against being along with him." *See id.* Defendants respond that the facts as pled do

7    not establish a sufficiently specific threat to trigger a duty to warn. *See* Mot. at 5-6. The Court

8    again agrees with Defendants.

9          As a general rule, "one owes no duty to control the conduct of another, nor to warn those

10   endangered by such conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982).

11   However, "[a] duty to control the conduct of another or to warn persons endangered by such

12   conduct may arise . . . out of what is called a 'special relationship.'" *Zelig v. Cty. of Los Angeles*,

13   27 Cal. 4th 1112, 1129 (2002). This duty may arise if "(a) a special relation exists between the

14   actor and the third person which imposes a duty upon the actor to control the third person's

15   conduct, or (b) a special relation exists between the actor and the other which gives the other a

16   right to protection." *Id.* (internal citations omitted); *Tarasoff v. Regents of Univ. of California*, 17

17   Cal. 3d 425, 435-36, 551 P.2d 334 (1976). In the context of a released offender, courts have

18   imposed a duty to warn on a releasing agent when "the released offender poses a predictable threat

19   of harm to a named or readily identifiable victim or group of victims who can be effectively

20   warned of the danger." *Thompson v. Cty. of Alameda*, 27 Cal. 3d 741, 758 (1980).

21         Given the cursory nature of Plaintiff's allegations, the Court holds that Plaintiff has not

22   sufficiently pled a duty to warn to survive Defendants' motion. As an initial matter, Plaintiff does

23   not indicate whether she believes that the duty to warn arose from a special relationship between

24   Defendants and Plaintiff or between Defendants and Diamond. *See generally* Compl. Further,

25   Plaintiff fails to adequately allege how or why Defendants should have known that Diamond

26   "pose[d] a predictable threat of harm to a named or readily identifiable victim or group of victims

27   who [could have been] effectively warned." *See id.* As such, Plaintiff's allegations fail "to give

28   fair notice . . . to enable the opposing party to defend itself effectively," and her negligence claim

United States District Court
Northern District of California

12

1    based on a duty to warn must be dismissed.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

2    2011).

3          The Court recognizes that Plaintiff's briefing provides additional detail regarding her

4    theory that Defendants had a duty to warn VCMC about Diamond.  Plaintiff asserts that a special

5    relationship existed between Plaintiff and Defendants because under California Penal Code

6    § 4011, "[o]nce Diamond was transported to VCMC, the County remained responsible for paying

7    for Diamond's medical services, and guarding him."  Opp'n at 6.  According to Plaintiff, this

8    relationship "in which Defendants are hiring the hospital to provide medical care for prisoners in

9    their custody" gave rise to a duty to warn and is akin to the special relationship found in *Johnson*

10   *v. State*, 69 Cal. 2d 782, 784 (1968).  *Id.*  Whatever the merits of that assertion might be, at this

11   stage the Court must limit its consideration to the pleadings, material submitted with or relied

12   upon by the complaint, and material subject to judicial notice.  *See Hal Roach Studios, Inc. v.*

13   *Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).  The Court may not transpose

14   Plaintiff's allegations from her briefs into the complaint.

15         Accordingly, the Court finds that Plaintiff's complaint fails to allege sufficient facts to

16   support her theory that Defendants had a duty to warn.

17         Because Plaintiff has not adequately alleged a duty to guard or a duty to warn, the Court

18   GRANTS Defendants' motion for judgment on the pleadings as to Plaintiff's negligence claim.[2]

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26

27   ------

[2] As established above, the issue of statutory immunity does not arise until a duty of care is found.

28   *Williams*, 34 Cal. 3d at 22.  Because Plaintiff has failed to adequately allege a duty of care that
     Defendants owed her, the Court need not reach the issue of statutory immunity at this stage.

United States District Court
Northern District of California

## III.    CONCLUSION

For the aforementioned reasons, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion for judgment on the pleadings.  Plaintiff may file an amended complaint consistent with this Order within 21 days, if she can do so consistent with her obligations under Rule 11.  To successfully plead § 1983 claims in her amended complaint, Plaintiff must allege non-conclusory facts from which the Court can plausibly infer that Defendants (1) recognized that Diamond posed an unreasonable risk and (2) actually intended to expose Plaintiff to such risks without regard to the consequences to the Plaintiff.

**IT IS SO ORDERED.**

Dated:  8/1/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

14